**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JESSICA P.**,

        Plaintiff,

        v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

Civil Action No. 20-12814 (ZNQ)

**MEMORANDUM OPINION**

**QURAISHI, District Judge**

This matter comes before the Court on Plaintiff Jessica P.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") final decision, which denied Plaintiff's request for disability insurance benefits and supplemental security income. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

**I.  BACKGROUND**

In this appeal, the Court must answer an evidentiary question: Does substantial evidence support Administrative Law Judge ("ALJ") Denise M. Martin's ("Judge Martin") determination

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

of Plaintiff's residual functioning capacity ("RFC")? The Court begins with a brief background of the procedural posture and decision by Judge Martin.[2]

### A. Procedural Posture

Plaintiff filed an application for disability insurance benefits and supplemental social security income on September 27, 2016, alleging a disability onset date of April 23, 2016. (AR 264-70, 271-80.) The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.* at 77-89, 92-107.) Thereafter, Plaintiff requested a hearing, and Judge Martin held that hearing on April 30, 2019. (*Id.* at 36-63.) Judge Martin issued a written opinion, where she determined that Plaintiff was not disabled. (*Id.* at 23.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed Judge Martin's decision. (*Id.* at 1-5.) This appeal followed. (ECF No. 1.) Plaintiff filed her opening brief on November 10, 2021 (ECF No. 16), and the Commissioner filed an opposition brief on December 22, 2021 (ECF No. 17). Plaintiff did not file a reply brief.

### B. Judge Martin's Decision

In her June 8, 2019 opinion, Judge Martin concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 10-23.) Judge Martin set forth the five-step process for determining whether an individual is disabled. (*Id.* at 11-12.) At step one, Judge Martin found that Plaintiff had not "engaged in substantial gainful activity" since the alleged onset date. (*Id.* at 12 (citing 20 C.F.R. §§ 404.1571, 416.971).) At step two, Judge Martin found that Plaintiff suffered from the following severe impairments: "cervical region traumatic spondylopathy; cervical region radiculopathy; chronic post-concussion syndrome; major

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 6-1 through 6-8. The Court will reference the relevant page numbers in the Record and will not reference corresponding ECF page numbers within those files.

depressive disorder (MDD); generalized anxiety disorder (GAD); and posttraumatic stress disorder (PTSD)." (*Id.* at 12 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At step three, Judge Martin determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 13 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) At step four, Judge Martin concluded that Plaintiff was "unable to perform any past relevant work." (*Id.* at 21 (citing 20 C.F.R. §§ 404.1565, 416.965).) At the fifth step, Judge Martin concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 22 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a).)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Said another way, substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607. 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require an explanation from the ALJ of the reason why probative evidence has been rejected to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

### B.   Establishing Eligibility for Disability Insurance Benefits and Supplemental Security Income

To be eligible for disability benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permit them to resume previous employment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If claimants cannot, they are not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, claimants will receive disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. DISCUSSION

Plaintiff appeals the Administration's Appeals Council's affirmance of Judge Martin's decision, primarily raising three alleged errors. (*See generally* Pl.'s Moving Br., ECF No. 16.) At bottom, the heart of Plaintiff's appeal is that Judge Martin erred regarding Plaintiff's RFC determination. The Court considers each issue in turn.

#### A. The ALJ's RFC Determination Was Supported by Substantial Evidence

The Court finds that the ALJ provided sufficient analysis and justification for Plaintiff's RFC. As a precursor to the step-four conclusion, Judge Martin found that Plaintiff had the RFC to perform sedentary work, subject to certain exceptions. (*Id.* at 15-21.) Specifically, Judge Martin determined that Plaintiff had the RFC to:

> occasionally lift and carry [ten] pounds and frequently lift and carry less than [ten] pounds. She can sit for six hours total in an eight-hour workday and stand and/or walk for two hours total in an eight-hour workday with alternating between sitting and standing every hour. Further, [Plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, [Plaintiff] should avoid unprotected heights and dangerous or moving machinery. She should avoid concentrated exposure to noise. Moreover, [Plaintiff] is limited to frequent, but not repetitive, handling and fingering. She can perform an unskilled, simple, routine, and repetitive job with occasional interaction with supervisors, co-workers, and the public. Finally, [Plaintiff] cannot perform fast paced or high production quotas.

(AR 15.)

Plaintiff argues that the ALJ failed to discuss numerous relevant items of evidence in the record in determining Plaintiff's RFC. According to Plaintiff,

> Dr. Coccaro, whose name was never mentioned before and whose report at 17F is never referenced in the decision had his treating RFC opinion rejected because it was "not consistent with the medical evidence of record as a whole". But the ALJ evidently didn't see the medical record as a whole, didn't know about [P]laintiff's herniated discs or the MRIs that prove them, didn't mention or refer to exhibit 2F

6

>   (orthopedic evaluation and MRI results), didn't mention Dr. Coccaro's name or his office treatment records from May, 2016 to September 2017, didn't mention or refer to Precision Pain Management, didn't mention [P]laintiff's spinal injections or other modalities of pain relief (Tramadol, physical therapy, Voltaren) . . . .

(Pl.'s Moving Br. 22-24 (internal citations omitted).) Fundamentally, Plaintiff argues that the ALJ's exclusion Dr. Coccaro's RFC opinion is "inconsistent with the medical record as a whole." (*Id.*)

In explaining the RFC finding, the ALJ examined Plaintiff's assertion that her impairments render her unable to work, finding that Plaintiff's impairments could cause the symptoms that she claimed, but also finding that the "intensity, persistence and limiting effects" of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 16.) In reaching the RFC determination, the ALJ indicated that Plaintiff alleged the inability to work "due to herniated discs, nerve damage, post-concussion syndrome, mild conductive hearing loss in the right ear, a victim of a house explosion, memory loss, postpartum depression, PTSD, depression, and anxiety." (*Id.*) The ALJ also summarized Plaintiff's hearing testimony and the information Plaintiff provided in a function report. (*Id.*) For example, the ALJ stated that despite Plaintiff's testimony that she has problems bending over and dropping things, Plaintiff stated in a function report that, among other things, she prepares her own meals, feeds her dog, cleans the house, drives a car, watches movies, does laundry, paints, and goes shopping. (*Id.* at 17.) The ALJ properly considered Plaintiff's daily activities. *Lambert v. Astrue*, No. 09-5187, 2010 WL 4810761, at *13 (D.N.J. Nov. 18, 2010) ("Contrary to [p]laintiff's assertion, it was not legally improper for the ALJ to consider [p]laintiff's daily activities. In this regard, the ALJ noted that [p]laintiff is 'able to care for his personal hygiene, [do] his own laundry, take[ ] out the garbage, prepare [ ] meals, help[ ] with the grocery shopping, attend[ ] narcotics anonymous meetings, and . . . take public transportation.'" (citation omitted) (alterations in original)).

7

As to Plaintiff's physical impairments, the ALJ discussed numerous items in the medical record, which includes (1) a March 2015 spine x-ray, (2) a September 2015 brain MRI, and (3) various treatment notes, including normal inspections of the cervical spine found in September 2016, October 2017, December 2017, January 2018, March 2018, and May 2018. (*Id.* at 17-18.) The ALJ also discussed numerous items in the record regarding Plaintiff's mental impairments, including mental status examination findings, self-reports, and diagnoses. For example, the ALJ noted that (1) in February 2017, Plaintiff reported that Zoloft is helping her handle life better, (2) treatment records dated February 2018 reflected that Plaintiff's anxiety and depression have decreased and Plaintiff reported that she has been improving, and (3) when Plaintiff presented for medication management in August 2018, she communicated that her feelings of depression and anxiety, sleeping, and nightmares have all improved. (*Id.* at 18.) The ALJ further stated as follows:

> A mental status examination demonstrated that [Plaintiff] was alert and positive with good eye contact. She had organized thought processes, average intellect, fair judgment, and fair to improved insight. In addition, [Plaintiff's] mood was neutral with a reactive affect. She denied having any hallucinations, suicidal ideations, homicidal ideations, obsessions, phobias, or delusions.

(*Id.*)

In reaching the RFC determination, Judge Martin also weighed the opinion evidence in the record. (*Id.* at 18-21.) With respect to George J. Carnevale, Ph.D., and Marg Desene, APN, Plaintiff's providers, the ALJ made the following observations:

> First, Dr. Carnevale opined in October 2018 that [Plaintiff] is not capable of maintaining competitive employment. Second, in December 2018, APN Desene opined that [Plaintiff] has marked limitations regarding adapting or managing oneself, understanding, remembering, or applying information, and concentrating, persisting, or maintain[ing] pace. He also reported that [Plaintiff] has moderate to marked limitations concerning interacting with others. Third, Dr. Carnevale opined in March 2019 that [Plaintiff] has extreme limitations in the areas of interacting with others,

8

> adapting or managing oneself, and concentrating, persisting, or maintaining pace, as well as marked limitations in understanding, remembering, or applying information.

(*Id.* at 20 (internal citations omitted).)

With respect to John Coccaro, M.D., another of Plaintiff's providers, the ALJ summarized Dr. Coccaro's April 2019 opinion, noting that Plaintiff can only sit for less than two hours in an eight-hour workday, stand/walk for less than two hours total in an eight-hour workday, and would be absent from work more than four days per month as a result of her impairments. (*Id.* at 21.)

The ALJ indicated that she gave "little weight . . . to the opinions of both Dr. Carnevale and Dr. Desense as they are neither well supported nor consistent with the medical evidence of record as a whole." (*Id.* at 20 (citing Exs. 7F at 7; 8F at 24; 9F at 4-5; 13F at 7-9; and 19F at 24, 26, 77, 87).) The ALJ similarly stated that she gave "little weight . . . to the opinion of John Coccaro, M.D. . . . because it is neither well supported nor consistent with the medical evidence of record as a whole." (*Id.* at 21 (citing Exs. 6F at 18, 30; 7F at 7-8; 8F at 23; 10F at 4; 18F at 3, 6, 8, 10, 12).)

Plaintiff is correct that the ALJ did not mention every item of evidence in the record and did not discuss the opinions of Plaintiff's treating physicians in detail in crafting Plaintiff's RFC. But the ALJ does not need to "undertake an exhaustive discussion of all the evidence [in determining the RFC] . . . [a]nd where [the Court] can determine that there is substantial evidence supporting the Commissioner's decision[,] . . . the *Cotter* doctrine is not implicated." *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 774 (3d Cir. 2004). Here, the ALJ's overall decision contained sufficient analysis for the Court to find that the decision was supported by substantial evidence. The Court, consequently, finds that "more than a mere scintilla" of evidence supported Judge Martin's RFC determinations. *See Anderson v. Saul*, No. 18-3625, 2020 WL 7237929, at *9

9

(D.N.J. Dec. 9, 2020) (affirming ALJ's RFC determination where "ALJ detailed years of record evidence" including medical records). To be sure, Judge Martin discussed numerous items of record supporting the determinations contained in Plaintiff's RFC sufficient to meet the substantial evidence standard. (*E.g.*, AR 18 (Plaintiff reporting that symptoms of anxiety and depression have improved).)

**B.  The ALJ Did Not Commit Harmful Error in the RFC's Hourly Sitting and Standing Provision**

Plaintiff next argues that the provision in the RFC permitting her to alternate between "sitting and standing every hour" is "hopelessly vague to the point where [P]laintiff cannot ascertain what this means." (Pl.'s Moving Br. 31 n.13.) Defendant counters that "even were there a question about what the ALJ intended regarding her finding (there is not), the ALJ's even more explicit discussion with the vocational expert [("VE")] at the administrative hearing made clear what she intended." (Def.'s Opp'n Br. 22.)

The Court agrees with Defendant. First, Plaintiff's counsel had the opportunity to question the VE during the administrative hearing and did not express any confusion regarding the hourly sit/stand provision. Second, if any ambiguity existed regarding the hourly sit/stand provision, the ALJ's hearing discussion with the VE clarified the ambiguity. Indeed, the ALJ and the VE engaged in the following colloquy:

> Q: If the person needed to alternate between sitting and standing every hour, could they still do this job?
>
> A: Yes. Let me just clarify with you, Judge. Do they need to be able to stay standing, then, for a long period of time or just stand for a moment or --
>
> Q: Stand for a moment and stretch.
>
> A: Yes. I don't -- I wouldn't reduce these job numbers or titles based on that.

10

(AR 60.) Based on its consideration of the hearing colloquy, the Court does not find error with respect to the ALJ's articulation of the RFC to the VE. *James v. Comm'r of Soc. Sec.*, No. 14- 4218, 2015 WL 4488027, at *20 (D.N.J. July 22, 2015) ("[T]he ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*.").

### C. The ALJ Did Not Commit Harmful Error Regarding the Representative Jobs the Hypothetical Individual Could Perform

Plaintiff argues that the "packer/packager DOT #731.685-014" job supplied by the VE in response to the VE's hypothetical is at odds with the DOT because the "job is actually a toy stuffer who operates a machine." (Pl.'s Moving Br. 31. n.14.) Plaintiff then posits, "What's noisier than an air compressor machine which [P]laintiff must operate all day as she blows up toys and packs them into boxes?" (*Id.*) Defendant counters that "even if the ALJ erred in relying on the packer/packager job (which she did not), substantial evidence would still support her ultimate conclusion in this matter as the [VE] also identified two other jobs on which the ALJ also relied in her decision." (Def.'s Opp'n Br. 23.)

The Court agrees with Defendant. Here, the VE testified that the hypothetical individual could perform the requirements of representative occupations such as (1) mail and addressing clerk, (2) general office clerk, and (3) packer/packager. (AR 22.) The ALJ stated that the VE's testimony "is consistent with the information contained in the [DOT], with the exception of the sit/stand option, which the DOT does not address." (*Id.* at 23.) The ALJ then indicated that she "has relied upon the [VE's] education and expertise in accepting the [VE's] testimony regarding the sit/stand option." (*Id.*) Here, even if the ALJ erred with respect to the packer/packager job title, the error would be harmless because the ALJ adopted the VE's findings with respect to the other two job titles. *Roque v. Comm'r of Soc. Sec.*, No. 14-02681, 2015 WL 2250469, at *15 (D.N.J.

11

May 13, 2015) ("The Third Circuit has held that as few as 200 jobs in the regional economy was sufficient." (citing *Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013)). That is, "substantial evidence supports the ALJ's conclusion at Step Five" because the ALJ "identified at least one position" that Plaintiff could perform and was available in the region in significant numbers. *Id.*

### IV.   CONCLUSION

Having reviewed the record as a whole, the Court affirms the affirmance of Judge Martin's decision by the Administration's Appeals Council. The Court will issue an order consistent with this Memorandum Opinion.

Date: May 31, 2022

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**